UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HERBERT RANDALL SLINKER,     Plaintiff,

v.     Civil Action No. 3:15-cv-370-DJH

JIM BEAM BRANDS CO.,     Defendant.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiff Herbert Slinker was involved in a workplace accident at Jim Beam Brands. As a result, Jim Beam required Slinker to submit to a drug test. Slinker failed the drug test and Jim Beam terminated his employment on January 6, 2014. Slinker then sued Jim Beam and his supervisor, Jim Brady, alleging age discrimination, promissory estoppel, negligent hire, and coerced waiver of statutory rights. (Docket No. 1-1, PageID # 16) The Court previously dismissed Slinker's claims against Brady. (D.N. 9) Jim Beam now seeks judgment on the pleadings or summary judgment. (D.N. 15) Because Slinker's state-law claims are preempted by section 301 of the Labor Management Relations Act (LMRA) and are time-barred, the Court will grant summary judgment to Jim Beam.

**I. Background**

Slinker was employed as a shipping operator in Jim Beam's Clermont, Kentucky facility. On January 6, 2014, while transporting cases on a pallet, Slinker accidentally struck a support beam. (D.N. 1-1, PageID # 18) No structural damage resulted, but the accident damaged some of the cases. (*Id.*) After the accident, Jim Beam required Slinker to submit to a drug test. He tested positive for marijuana. (*Id.*) Slinker was a union member and thus employed subject to a collective bargaining agreement. (*Id.* PageID # 18, 22) He complains that the urinalysis testing

1

procedures violated the policies and procedures described in the Collective Bargaining Agreement (CBA) because the specimen he provided was discarded afterward. (*Id.*, PageID # 19)  Slinker was tested again according to procedures specified by the CBA. (*Id.*)  However, Slinker does not state the results of this second test in his complaint.

In Count I of the complaint, Slinker, who is over forty years old, alleges that Jim Beam discriminated against him based on his age in violation of the Kentucky Civil Rights Act, specifically Ky. Rev. Stat. Ann. § 344.040(1)(a). (*Id.*, PageID # 19)  Slinker claims that Jim Beam failed to test another employee under the age of forty for drugs in violation of its policy after this employee was involved in an accident similar to Slinker's. (*Id.*, PageID # 20)  In Count II of the complaint, Slinker asserts a promissory estoppel claim, alleging that Jim Beam "promised that employee corrective action procedures would be applied equally." (*Id.*, PageID # 21)  In Count III of the complaint, Slinker asserts that Jim Beam was negligent in hiring Jim Brady, because Brady "selectively applied employment rules of Jim Beam." (*Id.*)  Like Count I, both of these claims refer to the Drug Free Work Place policy contained in the CBA. (D.N. 15-2, PageID # 108)  Finally, in Count IV of the complaint, Slinker claims that by making him sign a Last Chance Agreement, Jim Beam coerced him to waive his union legal protections and waive his statutory rights, in violation of Ky. Rev. Stat. Ann. § 336.700. (*Id.*, PageID # 21–22)

**II. Standard**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  As Jim Beam's motion was captioned and filed as a motion for judgment on the pleadings or for summary judgment (D.N. 15), Slinker had

notice and a reasonable opportunity to present all material pertinent to that motion in his response. Notably, however, Slinker failed to file a response to the defendant's motion.

The Court will grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### III. Analysis

#### A. Preemption Under Section 301

Because Slinker's state-law claims require interpretation of the CBA, these claims are preempted by section 301 of the Labor Management Relations Act (LMRA). Section 301 states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This section "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l. Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987)). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983)).

3

The Sixth Circuit uses a two-part test for determining whether state-law claims are preempted by section 301:

> First, the district court must examine whether proof of the state law claims requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*Gilreath v. Clemens & Co.*, 212 F. App'x 452, 462 (2007) (quoting *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (internal citations omitted)). Thus, only one prong of this test needs to be satisfied in order for state-law claims to be preempted. *See id.* Each of Slinker's claims is dependent upon analysis of the CBA, as set forth below. Therefore, Slinker's claims are preempted by section 301. *See Williams*, 482 U.S. at 394.

**1. Age Discrimination**

Slinker's age-discrimination claim in Count I of the complaint references the drug-testing policies of Jim Beam, which are found in the CBA. (D.N. 1-1, PageID # 20) The CBA contains a Drug Free Work Place policy, which outlines the drug testing procedures for employees involved in accidents. (D.N. 15-2, PageID # 108) Slinker alleges that Jim Beam and Brady failed to enforce this policy on other occasions involving employees who were less than forty years old. (D.N. 1-1, PageID # 20) Thus, he claims the policy was unlawfully enforced.

This claim is similar to the age-discrimination claim asserted by the plaintiffs in *Paluda v. ThyssenKrupp Budd Co.*, 303 F. App'x 305 (6th Cir. 2008). In that case, the plaintiffs were employees of an automobile supplier and claimed they had suffered age discrimination in the allocation of certain benefits. *Id.* at 309. The plaintiffs entered into a "Plant Closing Agreement" after their employer decided to close the facility where they worked. *Id.* at 306.

The agreement provided for various payments and benefits depending upon employment status and eligibility as stated under their collective bargaining agreement. *Id.* The plaintiffs claimed that they met all the qualifications for a particular benefits group except for their age. *Id.* at 306–07. Thus, they asserted age-discrimination claims under state law. *Id.* at 305. The court concluded, however, that the age-discrimination claims were "substantially dependent on analysis of a collective bargaining agreement" and were thus "completely preempted by § 301 of the LMRA." *Id.* at 309. This was because the plaintiffs' case would have required proof that they were similarly situated to the employees who qualified under the plaintiffs' desired benefits group, and whether the plaintiffs were eligible for benefits defined by the collective bargaining agreement. *Id.*

As in *Paluda*, interpretation of the CBA here is required to prove the state-law claim of age discrimination asserted. To determine whether Jim Beam enforced the Drug Free Work Place policy in a discriminatory manner requires interpretation of the policy itself. *Cf. Paluda*, 303 F. App'x at 309. With the first prong of the preemption test satisfied, the age-discrimination claim is thus preempted. *See Gilreath*, 212 F. App'x at 462.

**2. Promissory Estoppel**

For Slinker's promissory estoppel claim, both prongs of the preemption test are satisfied: this claim requires interpretation of the CBA, and the right claimed by Slinker was created by the CBA. *See id.* Slinker asserts that Jim Beam "maintained, issued, published and made known through multiple mediums that Defendant Jim Beam promised that employee corrective action procedures would be applied equally, without preferential treatment." (D.N. 1-1, PageID # 20) These "employee corrective action procedures" are again the procedures contained in the CBA's Drug Free Work Place Policy. Throughout his complaint, Slinker repeatedly alleges that Jim

5

Beam enforced the Drug Free Work Place policy in a discriminatory manner. (*Id.*, PageID # 19–21) Slinker also claims that Jim Beam broke its promise. (*Id.*, PageID # 21) In other words, he asserts that Jim Beam breached provisions of the CBA's Drug Free Work Place policy. Assessing whether Jim Beam broke that promise would require interpretation of the CBA to determine how the "employee corrective action procedures" should have been carried out and how Jim Beam failed to comply. Moreover, the promise Slinker alleges Jim Beam made is contained within the CBA. The second prong of the preemption test asks whether the right claimed by the plaintiff is a right created by a collective bargaining agreement or state law. *See Gilreath*, 212 F. App'x at 462. Therefore, Slinker's claim is preempted. *See Gilreath*, 212 F. App'x at 462.

### 3. Negligent Hire, Retention, and/or Supervision

Count III of Slinker's complaint alleges that Jim Beam negligently hired and retained Brady as an employee and that Brady "selectively applied the employment rules of Jim Beam." (D.N. 1-1, PageID # 21) Slinker also asserts that Jim Beam had a duty to supervise Brady's "professional conduct." (*Id.*) The "employment rules" Slinker refers to are contained within the CBA. The specific policy within the CBA underlying all of Slinker's claims is the CBA's Drug Free Work Place policy. (D.N. 15-2, PageID # 108) These are the "employment rules" he claims were violated when he was required to submit to drug testing. (*Id.*, PageID # 17–21) Therefore, this claim also requires interpretation of the CBA and is thus preempted. *See Gilreath*, 212 F. App'x at 462.

### 4. Coerced Waiver of Statutory Rights

Slinker asserts that Jim Beam required him to waive his "union legal protections" and his statutory rights in violation of Ky. Rev. Stat. Ann. § 336.700(2) by signing the Last Chance

Agreement. (D.N. 1-1, PageID #22)  This agreement was entered into in 2008 by Jim Beam and Slinker at the request of Slinker's union.  (D.N. 15-3, PageID # 119)  The purpose of the agreement was to save Slinker's employment with Jim Beam and to take steps to address his substance abuse issues.  (*Id.*)  According to its terms, failure to comply with the Last Chance Agreement would result in discharge without recourse to the grievance or arbitration procedures outlined in the CBA.  (*Id.*, PageID # 120)  Slinker claims that the Last Chance Agreement required him to waive his "union legal protections."  (D.N. 1-1, PageID # 22)  Determination of these "union legal protections" necessarily requires interpretation of the CBA.  Thus, this claim is also preempted by section 301.

The Last Chance Agreement is similar to the settlement agreement reached between the plaintiff and his employer in *Jones v. General Motors Corp.*, 939 F.2d 380 (6th Cir. 1991).  In that case, the agreement required the plaintiff to seek psychological treatment before he could return to work.  *Id.* at 381.  The plaintiff refused to cooperate, however, and sued for reinstatement to his old job.  *Id.*  On appeal, the Sixth Circuit addressed the issue of preemption under section 301.  *Id.* at 382.  The court concluded that the plaintiff's claim was preempted because the resolution of the case, while not involving direct interpretation of a precise term of the collective bargaining agreement, required the court to address relationships created through the collective bargaining process and to mediate a dispute founded upon rights created by the collective bargaining agreement.  *Id.* at 382–83.  In other words, the settlement agreement itself was "a creature wholly begotten by the CBA."  *Id.* at 383.

The same is true here.  The Last Chance Agreement resulted from Slinker's prior violation of the CBA's Drug Free Work Place policy.  The CBA also encourages settlements of grievances and disputes in order to "promote harmony and improve and promote good relations

7

between the Company and the Union." (D.N. 15-2, PageID # 100)  As in *Jones*, a direct interpretation of the CBA is not necessarily required, but provisions within the CBA provided the means and opportunity to enter into the Last Chance Agreement in the first place.  Like the settlement agreement in *Jones*, Slinker's Last Chance Agreement was a creature of the CBA.

**B. Statute of Limitations for Section 301 Claims**

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."  *Williams*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 24).  Thus, the Court construes Slinker's claims as claims under section 301.  Actions brought under section 301 are subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983); *Woosley v. Avco Corp.*, 944 F.2d 313, 318 (6th Cir. 1991).  This limitations period begins to run when the plaintiff knew or should have known "in the exercise of reasonable diligence" of the acts constituting the section 301 violation.  *Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 769 F.2d 330, 335 (6th Cir. 1985).  "[A] section 301 claim accrues 'against the company when it accrues against the union.'" *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir. 1990) (quoting *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987)).  "A decision by union not to arbitrate a claim has been held to constitute an event that could trigger a plaintiff's knowledge of the acts constituting the violation."  *Jones*, 939 F.2d at 384 (citing *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987) ("[T]he employee's hybrid cause of action may arise when the union takes an unequivocal position that it will not seek arbitration.").

After Slinker was terminated on January 6, 2014, he filed a grievance on January 13, 2014, asking to be reinstated. (D.N. 15-4, PageID # 122)  On February 26, 2014, Slinker's union

notified Jim Beam that no further pursuit of action was necessary regarding the grievance and it was therefore closed. (*Id.*, PageID # 124) Thus, as of February 26, 2014, Slinker should have known, in the exercise of reasonable diligence, that his grievance was closed and he would not be reinstated. It was an "unequivocal position" taken by the union sufficient for the cause of action to accrue. *See McCreedy*, 809 F.2d at 1236; *Jones*, 939 F.2d at 384. Slinker had six months from that date, until August 26, 2014, in which to timely file his complaint. But he failed to file a complaint until April 24, 2015. His claims are therefore time-barred.

**IV. Conclusion**

All of Slinker's state-law claims are preempted by section 301 of the LMRA. Slinker failed to file his complaint within the six-month statute of limitations period for Section 301 claims, and his claims are thus time-barred. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that defendant's motion for summary judgment (D.N. 15) is **GRANTED**. This action is **DISMISSED** and **STRICKEN** from the Court's docket. A separate judgment will be entered this date.

September 30, 2016

**David J. Hale, Judge**
**United States District Court**

9